O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. CR 07-00755 DDP |
| | ) | |
| Plaintiff, | ) | |
| | ) | **ORDER ON THE GOVERNMENT'S MOTIONS** |
| v. | ) | **IN LIMINE** |
| | ) | |
| JOSEPH ARAM BABAJIAN et al., | ) | |
| | ) | **[Motions filed on December 15,** |
| Defendants. | ) | **2008; Dkt. Nos. 131-136, 138]** |
| ──────────────────────── | ) | |

This Order is subject to the revisions to the form of documents stated on the record during the hearing on February 9, 2009.

I.   **BACKGROUND**

The Indictment alleges that Defendants Aram Babajian, Kyle Grasso, Lila Rizk, and Lester Robinson participated in a scheme to defraud lenders out of tens of millions of dollars by obtaining fraudulently inflated loans for homes from federally-insured lenders, from approximately July 2000 through January 2003. (Indict. ¶ 1.)  Rizk and Robinson are real estate appraisers, while Babajian and Grasso are real estate agents.  (Id. ¶ 5-16.)  The alleged primary leaders of the conspiracy were mortgage brokers Mark Abrams and Charles Fitzgerald ("Abrams-Fitzgerald") and the various entities they controlled.  (Id. ¶ 17-18.)  Abrams and

1  Fitzgerald are not defendants in the present Indictment.

2      The government now brings seven Motions in Limine for the

3  Court's consideration.

4  **II.   MOTIONS IN LIMINE**

5  A.   Motion in Limine to Admit Prior Statements of Alleged Co-

6        Conspirator Jamieson Matykowski

7        1.   Background

8      The government seeks to admit statements from 2002 made by

9  Abrams-Fitzgerald employee Jamieson Matykowski to independent real

10 estate agent Barry Sloane.  Matykowski had the responsibilities of

11 a buyer's agent for Abrams-Fitzgerald.  He located and toured

12 properties, negotiated purchase contracts, and handled the

13 paperwork for transactions.  (Indict. ¶ 63.)  Matykowski also

14 worked on two purchases for Abrams-Fitzgerald where Babajian and

15 Grasso received payments, but allegedly performed no services.

16 (Id.)  In 2002, Matykowski had a conversation with Sloane.  In this

17 conversation, Matykowski admitted that Babajian and Grasso were

18 receiving commissions on a real estate transaction for which they

19 had provided no services, and that they received these commissions

20 as part of an arrangement with Abrams-Fitzgerald.

21     The government intends to offer Sloane's corroborating

22 testimony in the event Matykowski's testimony is challenged by

23 Defendants.  The government argues that Sloane's testimony is

24 admissible under either Federal Rule of Evidence 801(d)(1)(B), as a

25 prior consistent statement, or Rule 801(d)(2)(E), as a statement

26 made in furtherance of the charged conspiracy.

27 ///

28 ///

2.   <u>Discussion</u>

A co-conspirator's statement is admissible where: 1) the conspiracy existed when the statement was made; 2) the defendant had knowledge of and participated in the conspiracy; and 3) the statement was made in furtherance of the conspiracy.  <u>United States v. Moran</u>, 493 F.3d 1002, 1010 (9th Cir. 2007).  However, any statements made for "personal objectives outside the conspiracy or as part of idle conversation are not admissible under Rule 801(d)(2)(E)."  <u>Id.</u>

The parties dispute the reason why Matykowski informed Sloane about Babajian and Grasso's agreement with Abrams-Fitzgerald.  (<u>See</u> Gov. Ex. C ¶ 17.)  The evidence itself is ambiguous as to whether Matykowski's comments were actually in furtherance of the conspiracy; as they imply both that Matykowski's explanation was required to complete the transaction and alternatively merely a conversational description of background information related to the deal.  <u>See</u> <u>Moran</u>, 493 at 1010 ("Statements made for personal objectives outside the conspiracy or as part of idle conversation are not admissible . . . .").  As such, the government's argument that Matykowski's purpose in telling Sloane was to prevent him from learning about the kickbacks scheme is speculative.  The Court declines to grant the government's motion on this ground.

The government also moves to have Matykowski's comments to Sloane admitted under Rule 801(d)(1)(B), as prior consistent statements.  A statement is not hearsay where the declarant testifies at trial, is subject to cross-examination concerning the statement, and the statement is "consistent with the declarant's testimony and is offered to rebut an express or implied charge

against the declarant of recent fabrication or improper influence or motive." Fed. R. Evid. 801(d)(1)(B). Defendants argue[1] that it is premature to make any ruling on this basis, as Matykowski has not been subjected to cross-examination. The Court agrees.

The Court grants the government's Motion in Limine to admit the statements of alleged co-conspirator Matykowski to Sloane as a prior consistent statement, subject to the requirements of Federal Rule of Evidence 801(d)(1)(B).

B.  Motion in Limine to Admit Testimony of Former Wife of
    Defendant Kyle Grasso

The government seeks to admit testimony of the former wife of Defendant Kyle Grasso, subject to the confidential communications privilege. Defendants do not oppose this Motion on these grounds.

The Court grants the government's Motion on this issue, subject to the confidential communications privilege.

C.  Motion in Limine to Admit Defendant Rizk's Admissions in
    Regulatory Agency's Disciplinary Action

    1.  Background

The California Office of Real Estate Appraisers ("COREA") is a state agency that licenses, regulates, and disciplines real estate appraisers in the state. COREA investigated Defendant Rizk's conduct in the transaction at 2055 Stradella Road in Los Angeles. This property is expressly identified in the Indictment, and the government alleges that Rizk provided an inflated appraisal for it. (Indict. 59-60.) In its statement of charges against Rizk, styled

---

[1] Defendants also argue there is insufficient foundation for Matykowski's comments. Defendants will have the opportunity to raise this objection at trial.

4

as an "Accusation," COREA alleged several violations of the Uniform Standards of Professional Appraisal Practice, including that Rizk: 1) overstated the estimate of market value for the Stradella property and produced a misleading appraisal; 2) made numerous errors in reporting comparable sales data; 3) failed to adequately collect and analyze available comparable sales data; and 4) failed to disclose the concurrent listing of the Stradella property. (Mot. 3-4; Gov. Ex. 3618 ¶ 8, Ex. A, ¶ 5.)  Rizk stipulated to "the truth of each and every charge and allegation" contained in the Accusation in a "Stipulation for Order of Public Reproval" ("Stipulation").  (<u>Id.</u>)  The Stipulation also provides that Rizk's admissions "shall not be admissible in any other criminal or civil proceeding."  (Gov. Ex. 3618 ¶ 10.)  This Stipulation was then adopted as COREA's "Decision and Order" on January 10, 2005 ("COREA Decision").

The government seeks to admit this evidence under Rule 408(a)(2), in order to show: 1) Rizk herself generated the Stradella property's appraisal (rather than another person); 2) the Stradella appraisal grossly overvalued the Stradella property; and 3) the Stradella appraisal was deficient, misleading, and grossly breached professional rules in the appraisal field.  (Mot. 5-6.)

2.   <u>Discussion</u>

Federal Rule of Evidence 408 applies to "Compromises and Offers to Compromise" and reads as follows:

(a) Prohibited uses. Evidence of the following is not admissible on behalf of any party, when offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount, or to impeach through a prior inconsistent statement or contradiction:

(1) furnishing or offering or promising to furnish--or accepting or offering or promising to accept--a valuable

1          consideration in compromising or attempting to compromise the claim; and

2          (2) conduct or statements made in compromise negotiations regarding the claim, except when offered in a criminal

3          case and the negotiations related to a claim by a public office or agency in the exercise of regulatory,

4          investigative, or enforcement authority.

5          (b) Permitted uses. This rule does not require exclusion if the evidence is offered for purposes not prohibited by

6          subdivision (a). Examples of permissible purposes include proving a witness's bias or prejudice; negating a contention

7          of undue delay; and proving an effort to obstruct a criminal investigation or prosecution.

8

9 Fed. R. Evid. 408.  Under 408(a)(1), a settlement agreement cannot

10 itself be used as evidence.  However, 408(a)(2) permits the

11 admission of evidence where it is "made in compromise

12 negotiations," and "offered in a criminal case and the negotiations

13 related to a claim by a public office or agency in the exercise of

14 regulatory, investigative, or enforcement authority."  Fed. R.

15 Evid. 408(a)(2).  As such, the rule distinguishes between a

16 settlement agreement, on the one hand, and negotiations or

17 statements made during an investigation.  See Fed. R. Evid. 408,

18 Committee Notes to 2006 Amendment (stating that an "offer or

19 acceptance of a compromise of any civil claim is excluded under the

20 Rule if offered against the defendant as an admission of fault").

21    As a threshold matter, the Court finds that Defendant Rizk's

22 Stipulation is a settlement agreement, as it was offered or

23 accepted in exchange for the settlement of COREA's charges.  The

24 Stipulation is not a negotiation or a response to an investigation,

25 but an agreement.  The COREA Decision attaches the Stipulation in

26 disposing of its charges and refers to the Stipulation as the final

27 understanding of the parties with respect to these charges.  (See

28 Gov. Ex. 3618 "Decision and Order" ("The attached Stipulation for

1  Order of Public Reproval is hereby adopted by the Director of the

2  Office of Real Estate Appraisers as its Decision in this

3  matter.").)   Therefore, although the government seeks to have the

4  Stipulation admitted under Rule 408(a)(2), the Court finds that it

5  is inadmissible under (a)(1).[2]

6      The Court therefore denies the government's Motion in Limine

7  to admit Defendant Rizk's Stipulation with COREA.

8  D.   Motion in Limine to Admit Expert Testimony of Real Estate

9       Appraisal Expert Ronald Buss

10      1.   Background

11      The government moves to admit the expert opinion of Ronald

12  Buss.   Buss will testify that, in his expert opinion, Defendant

13  Rizk's property appraisals: 1) grossly overstated the value of the

14  homes; and 2) failed to consider relevant information that

15  _____

16      [2] Defendants also argue that subsection (a)(2) was only added
    in 2006, after the date the Stipulation was entered.   Under the
17  previous version of Rule 408, the Ninth Circuit never squarely
    addressed whether the Rule applied in criminal cases.   However,
18  this Court has previously held that it does and operates to
    preclude the admission of civil settlements in criminal cases.   See
19  United States v. Tyger, CR04-00350 (DDP), Dkt. No. 39 (October 5,
    2005)(stating that "[t]he plain language of the Federal Rules of
20  Evidence generally indicates that rule 408 should apply in criminal
    proceedings."); see also United States v. Whitney, 180 Fed. Appx.
21  670, 672-73 (9th Cir. 2006)(finding that the former Rule 408
    excluded evidence from a civil case that a defendant wished to
22  introduce as exculpatory evidence).
        The use of the amended rule thus raises potential problems
23  under the Ex Post Facto Clause.   The Supreme Court has held that
    evidence rules do not generally raise ex post facto concerns, as
24  they are applied without inherent benefit to either party.   Carmell
    v. Tex., 529 U.S. 513, 533 n.2 (2000).   However, the Ex Post Facto
25  Clause is implicated by changes to evidence rules that permit
    "less, or different, testimony, than the law required at the time
26  of the commission of the offense, in order to convict the
    offender."   Id. at 522.   Given that the amendment to Rule 408
27  appears only to clarify the Rule's meaning, which is further
    consistent with this Court's previous understanding, the Court
28  finds that the Ex Post Facto Clause does not prohibit the
    application of the amended Rule to Defendant Rizk.

1 indicated the homes' value was far less than her appraisal.  (Mot.

2 2.)

3     2.  <u>Discussion</u>

4     Rule 702 of the Federal Rules of Evidence provides that where

5 "scientific, technical, or other specialized knowledge will assist

6 the trier of fact to understand the evidence or to determine a fact

7 in issue, a witness qualified as an expert by knowledge, skill,

8 experience, training, or education, may testify thereto in the form

9 of an opinion or otherwise."

10     The government states that Buss has worked as a real estate

11 appraiser for over three decades.  He currently works for a company

12 that provides valuation services, Buss-Shelger Associates, where he

13 has worked since 1984.  He has been certified as a General Real

14 Estate Appraiser by California, as well by the Appraisal Institute.

15 He is also a licensed California Real Estate Broker.  He has been a

16 member of numerous institutes and professional organizations for

17 appraisers and real estate brokers.

18     Defendant Babajian first argues that an expert is not

19 necessary here, because a jury can understand the difference in

20 value between two different home listing prices.  This argument

21 ignores the rationale for Buss' testimony, which is to explain why

22 the difference is significant.  Babajian also argues that the

23 testimony is not relevant, as he himself had nothing to do with the

24 appraisals.  But the government argues that Babajian was, in fact,

25 involved with the appraisals, which further are relevant to

26 Babajian's participation in the overall conspiracy.

27     Defendant Rizk next argues that Buss' expertise is listed in

28 too general a fashion and does not provide sufficient information

1  to determine whether "his valuation is any more reliable than

2  [Defendant] Rizk's." (Opp'n 12.) However, the question is not

3  whether Buss' testimony is more reliable than Defendant Rizk's,

4  which is a credibility determination, but whether Buss is qualified

5  as an expert. The Court also sees no prejudice to Defendants from

6  Buss' testimony, which again is relevant to establish a central

7  component of the conspiracy, as charged in the Indictment.

8     Defendants may conduct further voir dire of Buss about his

9  qualifications, out of the presence of the jury, at Defendants'

10  request. Subject to this qualification, the government's motion is

11  granted and the Court preliminarily finds that Buss' experience,

12  skill, and education render him fit to testify as a real estate

13  appraisal expert.

14  E.  <u>Motion in Limine to Preclude Evidence of Alleged Victim</u>

15     <u>Negligence</u>

16     1.  <u>Background</u>

17     The government moves to preclude the admission of any evidence

18  concerning alleged negligence on the part of lenders injured by the

19  Abrams-Fitzgerald scheme. The government seeks to preclude this

20  evidence on relevancy and prejudice grounds, as it argues

21  Defendants may seek to "divert the jury's attention – and waste the

22  Court's valuable time – by pointing their fingers at the victim

23  lenders who funded the loans." (Mot. 2.)

24     2.  <u>Discussion</u>

25     Defendants concede that negligence or the failure to act with

26  reasonable care by a victim is not an affirmative defense to a

27  criminal fraud charge. <u>See</u> <u>United States v. Ciccone</u>, 219 F.3d

28

1  1078, 1083 (9th Cir. 2000).   Nevertheless, Defendants argue that

2  the government's motion should be denied.

3      Defendants argue that negligence is closely tied to one of the

4  elements of bank fraud[3] - materiality.   Material statements are

5  those which "would reasonably influence a bank to party with money

6  or property."   Ninth Circuit Manual of Model Jury Instructions §

7  8.106 ("Bank Fraud - Scheme to Defraud by False Promises or

8  Statements"(18 U.S.C § 1344(2))).   Defendants argue that the

9  lenders' negligence is thus relevant because:   1) the role of the

10 lender in each transaction is pivotal to prove conspiracy; 2) it is

11 important to present a complete picture of the real estate industry

12 during the time period of the alleged fraud; and 3) that Defendant

13 Babajian's state of mind (his intent to defraud) is related to

14 whether the victim lenders behaved negligently, because he had no

15 reason to doubt that victim lenders were "carefully investigating

16 and analyzing appraisals and loan packages."   (Babajian Opp'n 10.)

17 While none of these reasons ultimately serve to explain why

18 evidence of the lenders' <u>negligence</u> should be admitted, there may

---

20     [3] The complete elements of bank fraud are:

       1) the defendant knowingly carried out a scheme or plan to
22     obtain money or property from the [lender] by making false
       statements or promises, with the jury's agreement on at least
23     one particular false promise or statement that was made;
       2) the defendant knew that the statements or promises were
24     false;
       3) the statements or promises were material, that is they
25     would reasonably influence a [lender] to part with money or
       property;
26     4) the defendant acted with the intent to defraud; and
       5) the lender was federally chartered or insured.

27 Ninth Circuit Manual of Model Jury Instructions § 8.106 ("Bank
   Fraud - Scheme to Defraud by False Promises or Statements"(18 U.S.C
28 § 1344(2))).

10

1  be evidence which has multiple uses as to both negligence and
2  materiality.

3       Accordingly, it seems that there needs to be an instruction
4  informing the jury that negligence is not an affirmative defense to
5  fraud.  Defendants are thus not entitled to make erroneous legal
6  arguments regarding negligence, but may attempt to introduce
7  evidence on other admissible grounds.

8       The Court denies the government's Motion in Limine, but
9  acknowledges that negligence is not an affirmative defense.  The
10 parties may prepare and request an appropriate jury instruction.
11 The Court will rule on the relevance and admissibility of matters
12 relating to Lehman Brothers or other affected lenders on an issue
13 by issue basis.

14 F.   <u>Motion in Limine to Admit Evidence of Fraudulent Property</u>
15      <u>Listings</u>

16      1.   <u>Background</u>

17      As described in the Indictment, one component of Defendants'
18 scheme was to falsify information in the Multiple Listing Service
19 ("MLS").[4]  (Indict. ¶ 4.)  Specifically, the government alleges
20 that Defendants Babajian and Grasso listed homes in the MLS for
21 millions of dollars more than the true purchase prices that Abrams-
22 Fitzgerald were actually paying to purchase the property.  (Indict.
23 ¶ 54(b).)  This enabled Abrams-Fitzgerald to defraud lenders by
24 qualifying them for an inflated loan on the property.  (Mot. 2.)

25

26      [4] The MLS is a public, internet database of home listings for
27 sale.  Real estate appraisers use the MLS to search for properties
   of comparable value to the homes they are appraising.  Real estate
28 agents use the listings to find homes for their clients.  (Indict.
   ¶ 4(b).)

The government seeks to introduce evidence of two real estate listings in the MLS which it alleges were fraudulent, but which were not included in the Indictment:  1332/1340 Summitridge Drive and 1261 Angelo Drive.  The government states that the fraudulent listings of these properties demonstrate Defendants' knowledge and direct involvement in the mortgage fraud scheme.  In particular, the government contends this evidence is important to rebut any argument by Defendants that the Indictment's allegations of fraud relating to the MLS listings for 805 North Alta Drive can be explained as an innocent mistake.

2.   Discussion

There are nine properties in the Indictment, and Babajian and Grasso allegedly committed acts with regard to eight of them. Their involvement is similar for all of these eight properties, however there are only specific allegations regarding the altering of MLS listings on two properties.  (See Indict. ¶ 25(j); ¶ 54; "Overt Act 23" at p. 47 (805 N. Alta Dr.); "Overt Act 58" at p.54 and "Overt Act 78" at p.58 (3386 Mandeville Canyon Rd.).)  Babajian and Grasso altered purchase contracts to restrict reporting to MLS on three more properties.  (See Indict. "Overt Act 100" at p.62 (9373 Claircrest Dr.); "Overt Act 114" at p.65 (2155 Roscomare Rd.); "Overt Act 145" at p.71 (2074 Benedict Canyon Dr.).)  As such, the conduct with regard to 805 N. Alta is relatively unique in the Indictment, which is the property for which the government seeks to add two corroborating property transactions.

The Indictment alleges that until August 8, 2000, Bababjian and Grasso listed the 805 North Alta Drive house as being worth $2,050,000.  Babajian and Grasso accepted an offer for $2,000,000

on the house from Abrams-Fitzgerald.  On August 16, Rizk appraised the house at $4,495,000.  On August 21, Babajian and Grasso caused MLS to alter the sales price to reflect a sale of $4,495,000 - despite their previous listing of $2,050,000.  Abrams-Fitzgerald then sent a loan application to a lender, containing the appraisal for $4,495,000.  On September 20, the lender loaned approximately $2,800,000 to Abrams-Fitzgerald ($800,000 higher than its actual sale price).

Babajian and Grasso deny knowing that the purchase price had any connection to an inflated appraisal or an inflated loan application, and they deny responsibility for their reporting of the 805 North Alta Drive appraisal, which the government states they blame on an administrative assistant.  As such, the government seeks to add two additional properties - 1332/1340 Summitridge (composed of two adjacent properties) and 1261 Angelo Drive.

The basic allegations of 1332/1340 Summitridge Drive are as follows.  The 1332/1340 Summitridge property was listed on July 5, 2000 on MLS by an unrelated agent for approximately $1,700,000, with the 1332 Summitridge adjacent property selling separately for approximately $950,000.  Abrams-Fitzgerald purchased the property for $1,700,000 on approximately July 7, 2000, with Babajian and Grasso as their agents.  On July 12, 2000, Rizk appraised the 1340 Summitridge property separately as worth $2,400,000.  On July 26, 2000, Babajian listed 1340 Summitridge separately as approximately $2,500,000.  Abrams-Fitzgerald prepared two purchase contracts to be sent to lenders specifying that the 1340 Summitridge property was worth $1,700,000 and the 1332 property was worth $2,450,000.

1   However, the purchase of these properties was cancelled and the

2   loan applications were apparently never sent.

3       The second property listing the government seeks to introduce,

4   for 1261 Angelo Drive, includes similar allegations.  In September

5   1999, Abrams-Fitzgerald bought the property for $2,800,000.

6   Babajian and Grasso represented them in this purchase.  On

7   September 13, 2000, Babjian and Grasso listed the 1261 Angelo

8   property for $8,150,000, which remained the listing until January

9   21, 2001.  In January 2001, Abrams-Fitzgerald sent a loan package

10  to a lender stating that the home was being bought for $7,700,000,

11  as appraised by  Rizk, and seeking a loan of $4,700,000.  On

12  January 2001, Abrams-Fitzgerald approved a second listing with

13  Babajian and Grasso, who listed the 1261 Angelo property at

14  $8,995,000.  The government alleges that the property was purchased

15  through a "straw man" with good credit, and that the lender was

16  defrauded into funding a loan of $4,700,000.  A review of Rizk's

17  appraisal of this property wrote that Rizk's appraisal did not

18  support the appraised value "by a wide margin."  (Gov Exs., Ex.

19  7667 at 3.)

20      The government asserts that the allegedly inflated MLS

21  listings for 1332/1340 Summitridge Drive and 1261 Angelo Drive are

22  admissible as they are "inextricably intertwined" with the charged

23  crimes.[5]  If a defendant is indicted for less than all of the

24  _____

25  [5] The government also argues that the evidence is admissible
    under Rule 404(b).  As the Court finds the above evidence is
26  inextricably intertwined, it does not reach this issue.  Evidence
    of prior acts is admissible under Rule 404(b) where:  "(1) there is
27  sufficient evidence to allow the jury to conclude that the
    defendant committed the prior act; (2) the act was not too remote
28  in time from the commission of the charged offense; (3) the act is
                                        (continued...)

1   actions which constitute a "single criminal episode," those acts

2   may be considered inextricably intertwined and thus are not

3   examined as "other act" evidence under Federal Rule of Evidence

4   404(b).  <u>U.S. v. Williams</u>, 989 F.2d 1061, 1070 (9th Cir. 1993).

5   There are two general categories of cases where "other act"

6   evidence is inextricably intertwined with the crime:  1) the other

7   act evidence serves as a basis for the criminal charge; and 2) when

8   necessary to permit the prosecutor to offer a coherent and

9   comprehensible story.  <u>U.S. v. Vizcarra-Martinez</u>, 66 F.3d 1006,

10  1012-23 (9th Cir. 1995).  The government argues that the evidence

11  from the additional two properties falls into the first category.

12  The Court agrees.

13      In order for the "other acts" to serve as a basis for the

14  criminal charge, there must be "sufficient contextual or

15  substantive connection between the proffered evidence and the

16  alleged crime to justify exempting the evidence [from Rule

17  404(b)]."  <u>Vizcarra-Martinez</u>, 66 F.3d at 1013.  Here, the

18  government alleges that inflating MLS listings was a component of a

19  conspiracy to defraud lenders.  (Indict. ¶ 54-55.)  While each

20  incident of fraud may indicate a divisible crime, the conspiracy to

21  commit various acts of fraud may encompass more conduct than what

22  is mentioned in the Indictment.  The acts themselves also contain

23  the basic pattern of the charge in the indictment.  According to

24  the government, the <u>de facto</u> buyers of all three properties were

25

26      [5](...continued)
    similar to the charged offense; (4) the act is introduced to prove
27  an element of the charged offense that is a material issue in the
    case; and (5) the act's probative value is not outweighed by its
28  potential prejudice."  <u>United States v. King</u>, 200 F.3d 1207, 1214
    (9th Cir. Nev. 1999).

Abrams-Fitzgerald.  The real estate agents representing them in the three purchases were Babajian and Grasso.  The appraiser of all three homes was Rizk.  The events also occurred near the same time - between July 2000 and January 2001 - while the overall scheme is alleged to have been ongoing from July 2000 through January 2003.  Finally, the common goal of all alleged conspirators was the same - to enable Abrams-Fitzgerald to acquire inflated loans for over-valued property.

Defendants raise a number of objections[6] to the above evidence, including:  1) the evidence is untimely, cumulative, and overly burdensome in the context of trial which is already lengthy; 2) the evidence is highly prejudicial because it is extraneous and suggests guilt by association; 3) the government has not laid a foundation for these properties; and 4) it is premature for the Court to rule on the government's motion before trial.  None of these arguments are ultimately persuasive.

Because the evidence of the properties at 1332/1340 Summitridge Drive and 1261 Angelo Drive are introduced to help explain the knowledge and intent of Defendants as to their conduct regarding 805 North Alta Drive, the evidence is not extraneous, despite relating to properties outside the Indictment. Furthermore, as the allegations regarding 805 N. Alta are unique within the Indictment, the evidence is not cumulative.  Defendants also have not shown that any prejudice will result from introducing this evidence, as they have several more months to examine the evidence before trial.   Lastly, contrary to Defendants' argument,

---

[6] Defendants also seek a continuance of the trial date to prepare to defend against these allegations.

16

a court decision as to fraud is not required before the admission of evidence of acts which is inextricably intertwined with a single criminal transaction; nor is the evidence precluded on this Motion because the government must present a foundation for its admission at trial.

The Court finds that the government may present evidence regarding the allegedly inflated MLS listings of the properties at 1332/1340 Summitridge Drive and 1261 Angelo Drive.

G.   Motion in Limine to Admit Summary Evidence of Properties and Appraisals

1.   Background

The government seeks to present summary evidence of voluminous documents including:  1) charts showing the movement of funds on the 9 homes charged in the Indictment (Gov. Exs., Ex. A); and 2) a list and summary of payments to Babajian, Grasso, and Rizk related to the mortgage fraud scheme (Gov Exs., Ex. B).  The government also seeks to introduce two exhibits with summary information regarding 96 properties, including: 1) tables summarizing the escrow close dates, "true" sales price and "inflated" sales price, commissions and payment dates to Babajian and Grasso, and the name of the real estate appraisers (Gov. Exs., Ex. C); and 2) tables summarizing the appraisal dates, name of the appraiser, comparable real estate values, and the "true" versus "inflated" sales price (Gov. Exs., Ex. D).

The government seeks to introduce this summary evidence under Federal Rules of Evidence 611(a) and 1006.

2.   Discussion

1    Federal Rule of Evidence 1006 provides that the contents of
2  "voluminous writings" may be presented "in the form of a chart,
3  summary, or calculation."  Defendants do not dispute that the
4  evidence presented by the government should be presented in summary
5  form, but argue that an expert witness is required to present the
6  summary documents.  Where no special knowledge is required to
7  attest to the accuracy of the documents, an expert is not required
8  to present summary evidence.  <u>United States v. Pree</u>, 408 F.3d 855,
9  869 (7th Cir. 2005).  Here, the underlying evidence consists of MLS
10  listings, transfers of funds, and payments.  As the government is
11  presenting the persons responsible for supervising and compiling
12  the summary reports as witnesses, no expert is required to present
13  this evidence as long as the government witness "simply testifies
14  as to what the Government's evidence shows."  <u>Id.</u>  The Court thus
15  finds that the presentation of this evidence in summary form by
16  non-expert witnesses is proper.
17    The Court will analyze Defendants' additional, separate
18  objections as to each category of summarized evidence in turn.
19         a.   <u>Graphical Charts Demonstrating the Movement of Funds</u>
20              <u>on 9 Charged Homes (Gov. Exs., Ex. A)</u>
21    Defendant Babjian objects to these charts because they are
22  "misleading" and constitute "improper propensity evidence under
23  Rule 404(b)."  (Babajian Opp'n 2.)  Babajian does not explain this
24  argument with reference to cases or specific aspects of the
25  government's exhibits, and the Court similarly has been unable to
26  find any support for this position.[7]

27  _____

28         [7] In fact, Defendant Babjian objects to <u>all</u> exhibits based on
                                      (continued...)

1    The Court finds that the government's summary evidence of the

2    movement of funds found in Exhibit A to its Motion in Limine is

3    admissible.

4         b.   <u>Lists and Summaries of Payments to Babjian, Grasso,</u>

5              <u>and Rizk (Gov. Exs., Ex. B)</u>

6    Defendant Grasso argues that the Lists and Summaries of

7    Payments are overbroad and argumentative, because they describe

8    payments which are wholly unrelated to the nine houses in the

9    Indictment.  However, the scope of the Indictment extends beyond

10   the nine properties, and specifically mentions the "hundreds of

11   thousands of dollars" received by Babjian, Grasso, and Rizk for

12   their work on the overall scheme.  (Indict. ¶ 27(c)-(d).)  As such,

13   the government's evidence is directly relevant to the charges at

14   issue.

15   Defendant Babjian next objects that the lists and summaries

16   are "self-serving" and "conclusory," and specifically objects to

17   the use of the phrase "details of specified payments." (Babjian

18   Opp'n.)  Babjian's actual objection is difficult to discern, but

19   the Court disagrees that Defendants suffer any prejudice from a

20   list of payments that describes the payor, the payee, the account

21   from which a payment is transferred, the account receiving that

22   payment, and the calculation of total payments received.  The

23   heading "Details of Specified Payments" is also neutral and not

24   argumentative.  Babjian's further argument that there is no

25   foundation for this summary evidence is also unexplained and

26

27   [7](...continued)
     the grounds that the exhibits are misleading and constitute
28   "propensity evidence" under Rule 404(b).  Again, Defendant provides
     no support for this position and the Court similarly finds none.

incorrect.  The government has provided the underlying documents for inspection by Defendants, as well as provided information about the witnesses who will be testifying to this evidence.

The Court finds that the government's summary evidence of the payments to Defendants found in Exhibit B to its Motion in Limine is admissible.

       c.   <u>Tables Summarizing Dates of Purchase, the "True" and "Inflated" Sales Price, Commissions and Payment Dates to Babajian and Grasso, and the Name of the Real Estate Appraiser (Gov. Exs., Ex. C)</u>

The Indictment alleges that one of the victim lenders, Lehman Brothers, bought and funded more than 80 artificially inflated loans as a part of the mortgage scheme.  Of these loans, Babajian and Grasso received real estate agent commission payments from 22 of the underlying property transactions.  Rizk and Robinson gave inflated appraisals of the underlying properties for 27 of these loans.  The government prepared two summary tables containing data on 96 properties (including the properties mentioned in the Indictment), 89 of which relate to loans from Lehman Brothers, 7 of which relate to loans from other victim lenders.

The tables list the dates of purchase, the "true" and "inflated" sales price, commissions and payment dates to Babajian and Grasso, and the name of the real estate appraiser.  (Gov. Exs., Ex. C.)  The government has introduced this evidence for the purpose of describing the "full scope" of the overall fraud committed against the lenders, as well as the specific involvement by Defendants, which extends beyond the nine properties charged in the Indictment.  (Mot. 3:1-8.)

1     Defendants first argue that these tables are overbroad,
2 because they contain data regarding properties that are not the
3 subject of this litigation and expand this case to a "ridiculous
4 degree," such that a continuance of the trial would be required.
5 However, although they are alleged generally, the Indictment
6 expressly includes more than the nine listed properties.  The
7 Indictment charges that "approximately 20 [inflated] loans" were
8 received on properties where Babajian and Grasso represented
9 Fitzgerald and Abrams as buyers.  (Indict. 66.a.-b.)  On the
10 summary chart, Babajian and Grasso are listed as receiving payments
11 from the sale of approximately 30 of the properties.  (Gov. Exs.,
12 Ex. C.)  The Indictment states that Rizk alone or in combination
13 with Robinson were the named appraisers for approximately 27
14 properties where inflated loans were received.  (Indict. 66.c.)  In
15 the summary chart, Rizk alone or with Robinson are named appraisers
16 on approximately 38 properties.  (Gov. Ex., Ex. C.)  As such, the
17 summary evidence falls within the scope of the Indictment.
18     Defendants next object to one of the headings in the charts,
19 used to describe the inflated loans received on the properties.
20 The government describes the second, higher numbers as "Inflated
21 Sales Price," and the previous, lower number as "True Sales Price."
22 Defendants object that the adjective "inflated" and its
23 juxtaposition with "true" is argumentative, conclusory, and without
24 foundation.  The government argues that this a fair conclusion,
25 because the chart provides evidence that a drastic, unjustified
26 increase occurred.  The term "true" also suggests that one price is
27 accurate, while the other is not.  While the government's witness
28 may make logical inferences based on summary evidence, the

1  summarizing evidence itself should not draw these conclusions.  A

2  truly neutral summarizing header would include "Government's

3  alleged true [or inflated] sales price."  The government's exhibit

4  is thus not admissible unless it qualifies the adjectives "true"

5  and "inflated" in this manner.

6      Next, Defendant Babajian argues generally that the tables are

7  introduced to imply guilt by association.   To the degree these

8  tables reference conduct by Defendants described within the

9  indictment, there is obviously no guilt by association.  As to data

10 which does not reference conduct by Defendants, this other evidence

11 is admissible under 404(b) to provide background information, as

12 well as knowledge, motive, or plan.

13     Lastly, Defendants have had sufficient notice of the evidence

14 at issue here.  The underlying documents have been provided to

15 Defendants, and trial is not set for several months.

16     The Court finds that upon the government's revision of the

17 adjectives "true" and "inflated," the government may submit its

18 summary evidence found in Exhibit C to its Motion in Limine.

19          d.   Tables Summarizing the Appraisal Dates, Name of the

20               Real Estate Appraiser, Comparable Real Estate

21               Values, and the "True" and "Inflated" Sales Price

22               (Gov. Exs., Ex. D)

23     Defendants repeat their objections regarding the use of "true"

24 and "inflated" as to these tables, and the Court again finds that

25 these are not appropriate conclusions in summarizing documents,

26 regardless of whether these are admissible opinions from the

27 witnesses describing the contents of the summary documents.

28

1       The Court finds that upon the government's revision of the

2   adjectives "true" and "inflated," the government may submit its

3   summary evidence found in Exhibit D to its Motion in Limine.

4

5

6   IT IS SO ORDERED.

7

8

9   Dated: February 17, 2009

10                                      DEAN D. PREGERSON
                                        United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28